Luis Farinacci, Manuel Vidal Alvarez, F. Gavilán & Cía., y G. S. Newman & Cía., demandantes y apelados *v.* The Niagara Fire Insurance Company, demandada y apelante.

No. 3914.—*Visto:* Mayo 11, 1927. *Resuelto:* Abril 25, 1928.

R. *Pérez Marchand,* abogado de la apelante; *López de Tord & Zayas Pizarro,* abogados de los apelados.

El Juez Presidente Señor del Toro, emitió la opinión del tribunal.

Este es uno de los siete casos que quedaron en poder de nuestro colega fenecido el Juez Asociado Carlos Franco Soto, —a quien habían sido turnados para actuar como ponente en ellos—, al cerrarse la corte en agosto de 1927.

Al abrirse de nuevo el tribunal en noviembre último, dichos casos fueron distribuidos entre sus otros cuatro miembros, sumándose a los cuarenta y uno que habían quedado en poder de los mismos, formando así un total de cuarenta y ocho recursos vistos y pendientes de resolución al comenzar el nuevo término.

La labor de la corte ha sido incesante desde entonces. Nuevas vistas se celebraron. Y no obstante haberse resuelto a partir de dicha fecha más de ciento treinta recursos con opinión y otro gran número *per curiam,* en los momentos en que esta opinión se escribe más de ciento cuarenta casos están pendientes de resolución en poder de los jueces.

A nuestra práctica de señalar las vistas en cuanto los recursos están en condiciones para ello a que nos hemos referido en la opinión emitida por el Juez Asociado Sr. Wolf en el caso de *Villar* v. *Conde,* (pág. 18), al aumento progresivo no sólo de las apelaciones si que también de las cuestiones suscitadas en las mismas y al haber funcionado el tribunal con sólo cuatro jueces durante los meses de noviembre, diciembre y casi todo enero últimos, se debe ello, en

gran parte, sin duda. Parece oportuno además recordar que esta Corte Suprema tal como actualmente funciona es la misma que fué constituida por el Congreso en 1900 y que el aumento de población y de riqueza y la mayor intensidad de la vida en la isla han sido desde entonces realmente notables.

Desde el 30 de enero último contamos con la ayuda del nuevo Juez Asociado Sr. Texidor. Nuevas vistas continuarán celebrándose durante los meses de mayo y junio próximos, en julio sólo se verán casos urgentes, y es la aspiración del tribunal entrar en las vacaciones que comienzan en agosto con el menor número de casos pendientes que sea posible.

No es lo usual hablar de estas cosas dentro de una opinión. Nos ha llevado a ello la circunstancia de querer expresar como expresamos que nuestro trabajo se ha facilitado grandemente en este caso al encontrar entre sus páginas un memorándum escrito en lápiz por nuestro compañero fenecido, preparado sin duda durante las vacaciones, poco antes de morir. Al estudiar cuidadosamente todas las cuestiones envueltas hemos en un todo coincidido con su criterio y, con pequeñas variaciones en la redacción y algunas adiciones en el análisis de la prueba, lo que sigue es lo que él mismo redactara.

Luis Farinacci, comerciante, celebró un contrato de seguro con "The Niagara Insurance Company," quedando cubiertas contra incendio las existencias de su establecimiento y mobiliario hasta un valor de $10,000. La compañía aseguradora expidió la correspondiente póliza, estableciéndose en ella las condiciones del seguro. El contrato fué por un año, debiendo vencer en noviembre 12, 1922. El 26 de febrero de 1922 ocurrió un incendio en el establecimiento de Farinacci, que destruyó, según se alega, todas las existencias y mobiliario, ocasionando perjuicios a Farinacci por $8,990.31.

Fundándose en estos hechos y en haber rehusado la com-

pañía aseguradora el pago de tales daños, se inició este pleito, en el que figuran como demandantes además de Farinacci sus acreedores Manuel Vidal Alvarez, F. Gavilán & Co., y G. R. Newman, a quienes había cedido la póliza hasta cubrir sus respectivos créditos ascendentes en total a $3,838.83.

La demandada sustancialmente contestó: que el incendio destruyó gran parte de la mercancía del demandante Farinacci, pero que las averías fueron tan leves que permitieron identificar la casi totalidad de las existencias; que Farinacci no cumplió con las condiciones 10, 11 y 13 y que la mercancía contenida en el "Bazar Puerto Rico" no valía en la noche del siniestro la suma de $8,990.31. Como defensas especiales alegó: 1, que por peritos nombrados por las partes se procedió a valorar y se inventarió cada artículo de los que había en el lugar del siniestro, por el precio corriente del mercado, sin tener en cuenta el daño como consecuencia del incendio y dicho inventario arrojó un montante de $2,001.66, que acepta la compañía y que fué repudiado por Farinacci; y 2, que el fuego no fué casual, haciendo la reclamación de mala fe y que Farinacci es culpable de negligencia y es causante del fuego por tener en su establecimiento materias inflamables sin el consentimiento de la demandada. Esta última defensa se estableció en el acto del juicio como enmienda a la demanda y con oposición del demandante.

La corte inferior después de oir una amplia prueba testifical por cada parte y alguna prueba documental, declaró con lugar la demanda, consignando como probados los siguientes hechos:

"1.—Que el día doce de noviembre de 1921, el Sr. Farinacci era dueño de las mercancías contenidas en el Bazar Puerto Rico, de esta ciudad de Ponce.

"2.—Que las expresadas mercancías, así como su mobiliario, fueron asegurados con la compañía demandada por la suma de $10,000.

"3.—Que el término en que vencía el expresado contrato de seguro, era el doce de noviembre de 1922.

"4.—Que los expresados bienes fueron destruidos por un incendio

ocurrido el 26 de septiembre de 1922; habiendo el demandante notificado la ocurrencia del incendio.

"5.—Que en la fecha del siniestro las referidas existencias, incluyendo mobiliario, tenían un valor de $8,990.31, las que fueron destruidas, habiéndose vendido el salvamento por la demandada, quien por medio de su representante Sr. Mayoral, percibió el producto de él.

"6.—Que en la fecha del siniestro el demandante Sr. Farinacci estaba adeudando a los otros codemandantes la suma de $3,838.85 procedentes de mercancías compradas para su establecimiento mercantil, y las cuales fueron destruidas por el incendio.

"7.—Que el demandante Sr. Farinacci cedió a sus acreedores su derecho en la póliza para cubrir el haber de sus créditos, reservándose la diferencia que pudiera resultar después de ésta ser liquidada.

"8.—Se estima así mismo que el demandante dió todos los informes y datos exigidos y a lo cual estaba obligado.

"Por todo lo cual llega a la conclusión la corte de que el demandante cumplió con las cláusulas de la póliza de seguro. Que de la apreciación de la prueba presentada en este caso por ambas partes, considerada a la luz de las alegaciones hechas y de la ley aplicable a este caso, y teniendo en cuenta las declaraciones de los testigos presentados por la parte demandante, la corte llega a la conclusión de que los demandantes han probado los hechos esenciales de su acción, por evidencia preponderante y fuera de toda duda razonable. Por otra parte la corte estima que la demandada no ha probado sus defensas, incluso la de incendiarismo."

No conforme la demandada interpuso el presente recurso de apelación. Señala como primer error en su alegato el haber la corte declarado sin lugar la excepción previa de falta de causa de acción. La excepción se basó en no haberse alegado en la demanda que el incendio que destruyó las mercancías se debió a un caso fortuito, ajeno a la voluntad del demandante Farinacci, y que la reclamación en cuanto al valor de las existencias era el justo valor que arrojaban los libros.

■■ No tiene razón la apelante. La reclamación tenía que ajustarse al valor que tuvieran las existencias destruidas al tiempo del siniestro, y esto se alega en la demanda.

Tampoco el demandante tenía que alegar que el incendio fué un caso fortuito, ajeno a su intervención o voluntad. Esa misma cuestión fué levantada en el caso de *Ríos* v. *Niagara Fire Insurance Company*, 33 D.P.R. 809, en el que esta corte, en parte dijo:

"No deja de ser suficiente la demanda porque no alegue que el incendio 'no se debió a la culpa o negligencia del demandante.' Se presume que las partes han actuado de acuerdo con la ley y es a la parte demandada a la que corresponde alegar en su caso que está exenta de responsabilidad porque el incendio se debió a la culpa o negligencia del demandante."

Los restantes errores que señala la apelante se refieren a la apreciación de la prueba por el juez inferior.

Se alega que erró la corte al declarar justificada la reclamación por el solo hecho de resultar de la prueba que las existencias aseguradas fueron destruidas por un incendio ocurrido en septiembre 26, 1922, sin concluir o reconocer en modo alguno que el incendio fuera el resultado de un caso fortuito.

Basta leer las conclusiones a que llegó el juez inferior en su opinión y se verá que una de ellas es que no se probó la defensa de incendiarismo.

En relación con tal defensa la apelada trató de probar que una de las puertas del establecimiento de Farinacci en el momento de iniciarse el fuego estaba abierta. El policía Montes, que estaba de servicio en la demarcación que comprendía la tienda de Farinacci, dice que vió que como a las siete de la tarde Farinacci salió de la tienda; que inspeccionó las puertas y estaban cerradas, pero que al iniciarse el fuego encontró una de ellas abierta. Los bomberos que apagaron el fuego dicen por el contrario que tuvieron que violentar la cerradura y abrir un boquete por la puerta para colocar las mangas de conducir y lanzar el agua.

Del mismo modo, aunque algunos testigos de la demandada declaran que vieron algunos cubos con un poco de gas

o gasolina, no sabiendo algunos de ellos a ciencia cierta si se trataba de una u otro materia inflamable, otros testigos de la demandante niegan haber visto una ni otra cosa en el establecimiento. Asimismo algunos testigos de la demandada afirman que en el local contiguo al del demandante, de Barquet, que también fué destruido, se encontró una tina con gasolina.

Siendo ello así, la prueba que la corte tuvo que apreciar fué contradictoria, y ella, que estaba en mejores condiciones para juzgar de la veracidad de los testigos, decidió el conflicto a favor del demandante, sin que se nos haya demostrado de una manera clara y convincente que erró al actuar en la forma en que lo hizo.

■ Se queja la apelante de que la corte erró al declarar que en la fecha del incendio las existencias en el establecimiento de Farinacci, incluyendo el mobiliario, tenían un valor de $8,990.31, que es el montante de la reclamación.

En este caso la póliza no contenía la cláusula de que los libros de contabilidad debían estar guardados en caja de seguridad (iron safe clause). Aparece que a excepción de un libro de inventarios de 1920, se quemaron los demás libros que llevaba Farinacci y guardaba en una caja de hierro. El decía que solía sacarlos de la caja y los ponía encima del aparador en una tabla que sobresalía. Farinacci notificó a la compañía del hecho del siniestro y sometió a ella un *affidavit* de las pérdidas que le fueron causadas por el fuego (proof of claim). La compañía, a falta de libros con que comprobar la preexistencia de la mercancía, pidió al demandante copia de factura, cuentas corrientes con sus mayores acreedores y la cuenta corriente que llevaba con los bancos. Todos estos documentos le fueron remitidos por el asegurado, y en el acto de la vista se presentaron como prueba. El inventario pasado el 31 de agosto de 1922, o sea, menos de un mes antes del incendio, arrojaba un total de $9,090.31, y declaró ampliamente sobre el valor de las existencias y

el mobiliario en el acto del fuego el propio demandante. También declaró el testigo Víctor Manuel Ramos. Se presentó, además, prueba de comerciantes que acostumbraban visitar el establecimiento de Farinacci y que lo habían hecho pocos días antes de ocurrir el incendio, declarando que en su última visita al establecimento ellos calculaban en unos $9,000 o $10,000 el valor de las existencias que contenía.

Esta última no es prueba que por sí sola pueda acreditar el hecho pero es un dato que puede apreciarse al pesar y tomar en consideración los demás elementos de prueba, que sirvieron de base a la sentencia de la corte.

Imputa como error la apelante que la corte inferior pasó por alto y desconoció el inventario de las mercancías contenidas en el establecimiento del demandante el día del siniestro, que por convenio especial del demandante y la demandada y por peritos nombrados por las respectivas partes arrojó un valor de $2,001.66 que la corte debió considerar como única suma y límite de la responsabilidad de la demandada.

La apelante al discutir y plantear este error parte de una base falsa. No es cierto que los peritos nombrados habían de inventariar las mercancías contenidas en el establecimiento la noche del incendio. El peritaje se limitó a inventariar y valorar el resto de las mercancías que quedaron después del incendio, o sea, el salvamento. El propio perito Roig que fué nombrado por la compañía aseguradora, declarando en el acto del juicio, se expresó así:

"P.—¿Qué fué lo que ustedes fueron a tasar? R.—Pues las existencias que quedaban por virtud del incendio."

No sólo el perito Roig declaró en ese sentido. Véase como se expresó Mayoral, agente de la compañía demandada:

"R.—Después de enterarme que la policía había estado allí, del repórt que había dado la detective, se procedió a la separación de lo que podría utilizarse en algo para tasarlo: nombré un perito por

cuenta de la compañía y requerí a Farinacci para que nombrase otro a fin de darle un valor a lo salvado: . . . . ."

Es cierto que Mayoral poco después declaró que el fuego había sido muy poco y que casi todas las existencias se habían salvado. Sin embargo, a este respecto conviene transcribir de la larga declaración del ajustador H. F. Besosa lo que sigue:

"En varias ocasiones tuvimos conferencias el señor Farinacci y yo y tratamos de transar este asunto y siempre llegamos más o menos a ofrecerle a este caballero cuatro mil o cinco mil dólares, pero no creo que pasó de cinco mil, pero nosotros tratamos de buena fe de arreglar este asunto en el valor verdadero de las existencias que había allí, dejando aparte el motivo del incendio, que de acuerdo con mi criterio no fué un fuego casual, sino que fué un fuego intencional, no digo de quién fué la intención, pero indiscutiblemente el fuego fué intencional, pero dejando eso aparte, yo quise transar el asunto con el señor Farinacci y llegué a cuatro mil o cinco mil dólares, cantidad que el señor no se mostraba tampoco dispuesto a rehusar, sino más bien él parece que estaba dispuesto a aceptar, pero había el obstáculo de que ciertos acreedores del señor Farinacci o tenían embargadas las pólizas o tenían ciertas reclamaciones contra el señor Farinacci y estos señores, especialmente el señor Vidal, que fué con quien tuve varias entrevistas, este señor se negaba a aceptar o que el señor Farinacci aceptara esos cuatro o cinco mil dólares."

Según los autos las sumas debidas no llegaban a cuatro mil dólares.

No se hace necesario discutir los restantes errores que señala el apelante, pues constituyen una repetición de los que hemos discutido.

*Debe confirmarse la sentencia recurrida.*

El Juez Asociado Señor Texidor no intervino.